UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND,<br><br>         Plaintiff,<br>   v.<br><br>509 EXCAVATING LLC,<br><br>         Defendant. | CASE NO. 2:22-cv-00829-KKE<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Entry of Default Judgment. Dkt. No. 24. Plaintiffs seek to recover unpaid employee benefit contributions from Defendant 509 Excavating LLC, who has not appeared or defended in this action. The Court grants the motion for the reasons set forth below.

**I.   BACKGROUND**

Plaintiffs Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and 612 of the International Union of

Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund (collectively, "the Trust Funds") are joint labor-management funds created pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c) ("LMRA"), and the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Dkt. No. 1 at 2. The Trust Funds provide employee benefits including medical, pension, and training benefits to eligible employees covered by a collective bargaining agreement ("CBA") and related labor and trust agreements. *Id*. at 2–3. Defendant 509 Excavating, a Washington State limited liability company, was a signatory to certain agreements with the Trust Funds up until May 31, 2021. *Id.* at 2–3, 5. Among other things, these agreements obligated 509 Excavating to pay hourly fringe benefit contributions on behalf of employees for covered work and to submit timely reports of hours worked and payment contributions. *Id.* at 3–4. The relevant trust agreements further provide that the Trust Funds are entitled to damages, costs, and interest if 509 Excavating ran afoul of its obligations. *Id.* at 4.

  The complaint alleges that a "for-cause audit" and "closing audit" initiated by the Trust Funds revealed that 509 Excavating failed to adequately report covered hours or make required benefit contributions for the periods of July 2018 through December 2020 and January 2021 through May 2021. Dkt. No. 1 at 4–5. The Trust Funds further allege that 509 Excavating failed to provide the necessary records to complete the closing audit "despite numerous demands from the [Trust Funds'] auditor." *Id.* at 5. The Trust Funds filed their complaint in June 2022 to recover contributions owed and related relief, including an order compelling 509 Excavating to submit and provide payroll records for the closing audit, pursuant to the trust agreements and ERISA. *See id.* at 5–6. After the Trust Funds effectuated service and 509 Excavating failed to appear or defend in this action, the Clerk of Court entered default against it and the Trust Funds thereafter moved for

1  default judgment. *See* Dkt. Nos. 23–24.[1]

2  **II.   DISCUSSION**

3  **A.   Subject Matter and Personal Jurisdiction**

4  The Court has subject matter jurisdiction over the Trust Funds' claims pursuant to Sections 502 and 515 of ERISA. 29 U.S.C. §§ 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title."), 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."); *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (explaining that Section 1145 provides a federal cause of action to enforce preexisting obligations created by collective bargaining agreements). Trust funds, including the Plaintiffs in this case, can bring claims as fiduciaries under sections 1132 and 1145. *See, e.g.*, *Locals 302 & 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v. Barry Civil Constr., Inc.*, No. C16-0404-JPD, 2016 WL 4528462, at *3 (W.D. Wash. Aug. 29, 2016); *Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Adam Moreno & Sons, Inc.*, No. 20-cv-09155-TSH, 2021 WL 8153587, at *7 (N.D. Cal. July 8, 2021), *report and recommendation adopted*, 2021 WL 8153573 (N.D. Cal. Aug. 16, 2021).

The Court also has personal jurisdiction over 509 Excavating. Personal jurisdiction over a defendant may be acquired by personal service on that defendant, *Cripps v. Life Ins. Co. of N. Am.*,

---

[1] The Clerk of Court's original entry of default was vacated and the Trust Funds' subsequent motion for an extension of time to serve 509 Excavating was granted. *See* Dkt. Nos. 15–17.

980 F.2d 1261, 1267 (9th Cir. 1992), and the Trust Funds' service on 509 Excavating's governor, Jessica Hall-Cranefield, sufficiently establishes personal jurisdiction in this case. Dkt. Nos. 18-1–18-2; *see also* 29 U.S.C. § 1132(e)(2).

**B.     Legal Standard**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil Procedure. The Rule authorizes the Court to enter default judgment against a party that fails to appear or otherwise defend in an action. The Court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors (the "*Eitel* factors") in deciding whether to grant a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

**C.     The Trust Funds are Entitled to a Default Judgment**

The Court has considered the *Eitel* factors and finds that default judgment is appropriate in this case for the reasons discussed below.

      1.     <u>The Possibility of Prejudice to the Trust Funds</u>

"[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and internal quotation marks omitted). 509 Excavating has failed to respond to this action, so default judgment is the Trust Funds' only means for recovery. *See Eve Nevada, LLC v.*

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 4

*Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022). Thus, the first *Eitel* factor supports default judgment.

    2. <u>The Merits of the Trust Funds' Substantive Claims and the Sufficiency of the Complaint</u>

In evaluating the second and third *Eitel* factors, the Court considers the merits of the Trust Funds' claims and whether the allegations in the complaint are sufficient to state a claim on which they may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Section 515 of ERISA provides that employers must pay contributions required "under the terms of the plan or under the terms of a collectively bargained agreement," 29 U.S.C. § 1145, and Section 502 provides for a civil action and remedies, 29 U.S.C. § 1132(a), (g).

To prevail on an ERISA claim for unpaid contributions, "a plaintiff must prove that: (1) the trust funds are a qualified multi-employer plan as defined by 29 U.S.C. § 100[2](37); (2) the defendant is an employer obligated to contribute under the plan's terms, and (3) the defendant failed to contribute in accordance [with] the plan." *Trs. of S. Cal. IBEW-NECA Pension Plan v. Alarm Tech Sec. Sys., Inc.*, No. CV08-3432-PSG (PJWx), 2008 WL 4196627, at *3 (C.D. Cal. Sept. 8, 2008). The first factor is met because the complaint alleges that the Trust Funds are "joint labor-management Trust Funds" created pursuant to the LMRA and ERISA. Dkt. No. 1 at 2; *Trs. of S. Cal. IBEW-NECA Pension Plan*, 2008 WL 4196627, at *3 (finding that plaintiffs had adequately pled the first element by pleading that the trusts were multi-employer trusts created and maintained pursuant to the LMRA and/or collective bargaining agreements). Turning to the second factor, the Trust Funds have adequately established that 509 Excavating is an employer obligated to pay contributions under the trust agreements. Dkt. No. 1 at 3–4; Dkt. No. 26 at 2–3; Dkt. No 26-2 at 15–17, 75–76, 129–30.

As for the third factor, the relevant trust agreements require 509 Excavating to make timely

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 5

employee benefit contributions to the Trust Funds, but the Trust Funds allege that 509 Excavating failed to make complete and timely contributions for July 2018 through December 2020. Dkt. No. 1 at 3–4.[2] Based on the allegations in the complaint, the Trust Funds have sufficiently pled a claim for violation of 29 U.S.C. § 1145, and the claim has merit.

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). This requires courts to assess whether the recovery sought is proportional to the harm caused by 509 Excavating's conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014), *abrogated on other grounds by Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020). The Trust Funds seek a total of $197,771.41 against 509 Excavating comprised of the following amounts:

1. $119,419.42 in delinquent contributions from July 2018 through December 2020;
2. $14,365.01 in liquidated damages;
3. $48,419.98 in pre-judgment interest calculated through May 12, 2023;
4. $7,140 in auditor costs;
5. $7,900 in attorney's fees; and
6. $527 in costs.

Dkt. No. 24-1 at 2. The amount the Trust Funds seek, though substantial, is supported by the trust agreements and declarations and exhibits filed in conjunction with the motion for default

---

[2] Although the Trust Funds' complaint requests an order compelling 509 Excavating to comply with a closing audit for the period of January 2021 through May 2021, Dkt. No. 1 at 5–6, no such request is included as part of the instant motion. *See generally* Dkt. Nos. 24, 24-1, 25.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 6

judgment. *See* Dkt. Nos. 25–27; *see also* Dkt. No. 29 at 4. And, as set forth more fully below, ERISA mandates an award of unpaid contributions, interest on delinquent contributions, liquidated damages, reasonable attorney's fees, and costs on a judgment for unpaid contributions. 29 U.S.C. § 1132(g)(2). Therefore, this factor weighs in favor of default judgment.

4. <u>The Possibility of a Dispute Concerning Material Facts</u>

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

5. <u>Whether the Default was Due to Excusable Neglect</u>

Turning to the sixth factor, the record contains no indication that 509 Excavating's default was due to excusable neglect. In light of concerns regarding the adequacy of the Trust Funds' initial service of process, *see* Dkt. Nos. 6, 15, the Trust Funds re-served 509 Excavating, Dkt. Nos. 18-1–18-2. Despite being given sufficient notice of this action, 509 Excavating has not appeared, responded to the motion, or contested the entry of default judgment. Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment. *See Eve Nevada*, 2022 WL 279030, at *4.

6. <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Federal Rule of Civil Procedure 55(b) "indicates that 'this preference, standing alone, is not dispositive'" because Rule 55 allows a court to issue a default judgment if defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. C94-2684-TEH, 1996 WL

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 7

75314, at *3 (N.D. Cal. Feb. 13, 1996)). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment, especially where, as here, 509 Excavating has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of a default judgment for the Trust Funds.

**D.     The Trust Funds' Recovery**

Having determined that a default judgment is warranted, the Court turns to the Trust Funds' recovery. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also* LCR 55(b). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that [it] may make a calculated decision as to whether or not it is in [its] best interest to answer." *Sacramento Area Elec. Workers Health & Welfare Tr. V. FAMCO*, No. 17-CV-03823-BLF, 2019 WL 13203780, at *2 (N.D. Cal. Nov. 20, 2019) (citation omitted). The Trust Funds' complaint prayed for each type of relief they now seek. Dkt. No. 1 at 6. Specifically, they request a total of $197,771.41 from 509 Excavating, consisting of (1) delinquent fringe benefit contributions for July 2018 through December 2020, (2) liquidated damages, (3) accrued pre-judgment interest, (4) attorney's fees, and (5) costs. Dkt. No. 24-1 at 2. The Trust Funds also ask for post-judgment interest at the rate of 12 percent per annum. *Id.*

The trust agreements obligate 509 Excavating to pay each type of relief requested. *See* Dkt. No. 1 at 3–5; Dkt. No 26-2 at 16–17, 76, 130. ERISA also provides for each type of relief requested in an action under 29 U.S.C. § 1145 on behalf of a plan to collect delinquent contributions. *Id.* § 1132(g)(2). Section 1132(g)(2) "is 'mandatory and not discretionary.'" *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Tr. v. Beck*

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 8

*Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th Cir. 1984)). However, a plaintiff seeking money damages must also "'prove-up' the damages" sought through admissible evidence. *FAMCO*, 2019 WL 13203780, at *3 (citations omitted). Accordingly, though the Trust Funds have established their entitlement to an award under Section 1132(g)(2), the Court must next examine the appropriate amount of relief.

    1. <u>Delinquent Contributions</u>

The Trust Funds seek $119,419.42 in unpaid contributions for covered work conducted between July 2018 and December 2020. Dkt. No. 24-1 at 2. Their motion includes a declaration from Stephanie Winters, a third-party compliance auditor from Anastasi Moore & Martin, PLLC, retained by the Trust Funds to calculate 509 Excavating's delinquency. Dkt. No. 27 at 1–2. Winters avers that due to 509 Excavating's "inconsistent and inaccurate records," she needed to obtain additional records from the Washington State Employment Security Department in order to complete the audit. *Id.* at 2. After determining the correct number of reportable hours, Winters then calculated the total amount of contributions due for the time period of July 2018 through December 2020, which she states is $119,419.42. *Id.* at 2–3; *see* Dkt. No. 27-1 at 2–8 (summary of unreported hours and contributions owed).

Based on the supporting documentation provided, the Court awards the Trust Funds $119,419.42 in unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(A).

    2. <u>Liquidated Damages</u>

The Trust Funds next request $14,365.01 in liquidated damages. Dkt. No. 24-1 at 2. ERISA provides for liquidated damages in "an amount equal to the greater of" interest on the unpaid contributions or as provided for under the plan "in an amount not in excess of 20 percent" of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The trust agreements provide that the delinquent employer "shall be liable for a liquidated damage charge in the sum of twelve percent (12%) of

1  the amount of his delinquency; provided that such liquidated damages shall in no event be less
2  than twenty-five dollars ($25.00)." Dkt. No. 26-2 at 16, 76, 130.

3   Turning to the specific amount of liquidated damages requested, Winters's declaration
4  states that she calculated the amount of liquidated damages using the formula in the trust
5  agreements: overdue contributions multiplied by 12% of the delinquent contributions for each
6  month or a minimum of $25, whichever was greater. Dkt. No. 27 at 2. That calculation is consistent
7  with the trust agreements. Dkt. No. 26-2 at 16, 76, 130. Having determined that the Trust Funds'
8  calculations are correct and consistent with the agreements, the Court awards them $14,365.01 in
9  liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii) and the trust agreements.

10   3. Attorney's Fees

11   The Trust Funds seek $7,900 in attorney's fees. Dkt. No. 24-1 at 2. ERISA allows recovery
12  of "reasonable attorney's fees[.]" 29 U.S.C. § 1132(g)(2)(D). Awards for attorney's fees in ERISA
13  actions are calculated using a hybrid lodestar/multiplier approach. *Van Gerwen v. Guarantee Mut.*
14  *Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This approach has two parts: (1) the court
15  determines the lodestar amount by multiplying the number of hours reasonably expended in the
16  litigation by a reasonable hourly rate, and (2) the court may adjust the lodestar upward or
17  downward using a multiplier based on factors not subsumed in the initial calculation. *Id.* To
18  determine the total amount claimed, the Trust Funds have presumably used the lodestar method
19  and have not requested an adjustment of that method. Dkt. No. 25 at 4. Nor does the Court find
20  that any of the *Kerr* factors recommend an upward or downward adjustment. *See Kerr v. Screen*
21  *Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying and adopting 12 factors "to be
22  considered in the balancing process required in a determination of reasonable attorney's fees"),
23  *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

24

The Court finds that counsel's hourly rate of $250–$285[3] per hour (Dkt. No. 25-1 at 4), is reasonable for the work performed and for the Seattle market. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."); *Bds. of Trs. of Seattle Area Plumbing & Pipefitting Indus. Health & Welfare Tr. v. Optimal Facility Sols., LLC*, No. 2:18-cv-00443-RAJ, 2019 WL 5887292, at *2 (W.D. Wash. Nov. 12, 2019) (finding counsel's $290 hourly rate to be reasonable in joint labor-management funds case). The Court also finds the rate of $125 per hour for counsel's legal assistant to be reasonable for the work performed and for the Seattle market. Dkt. No. 25-1 at 4; *see Camacho*, 523 F.3d at 979; *UN4 Productions, Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1138, at 3 (W.D. Wash. 2019) (finding a legal assistant's hourly rate of $145 to be reasonable).

With respect to the reasonableness of the number of hours expended, the Court finds that approximately half of the 30.3 total hours spent litigating this case are compensable. Dkt. No. 25-1 at 4. More specifically, the Court will not award fees for time expended correcting the initial inadequate service on 509 Excavating and refiling the motion for default. *See Johnson v. Peter*, No. C21-1602-LK, 2023 WL 22021, at *8 (W.D. Wash. Jan. 3, 2023) (declining to award fees incurred as a result of the need to correct errors); *Stephens v. Marino, White, O'Farrell & Gonzalez*, No. C10-5820-BHS, 2011 WL 4747920, at *4 (W.D. Wash. Oct. 7, 2011) (same). Accordingly, the Court declines to award attorney fees for the 15.3 hours billed between March 30, 2023, and May 9, 2023, incurred in response to court orders striking the Trust Funds' initial motion for default judgment and vacating the Clerk's entry of default, as well as directing that the

---

[3] Jane P. Ewers billed at a rate of $285 per hour throughout the course of this litigation (Dkt. No. 25-1 at 4), whereas David L. Sieck appears to have increased his hourly rate from $250 to $275 between June and September 2021, and from $275 to $285 between June and August 2022 (*id.* at 3–4).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 11

Trust Funds effect proper service and renew their motion for default judgment in compliance with the applicable law and rules of procedure. Dkt. No. 25-1 at 2; *see* Dkt. Nos. 15, 17, 28.

In sum, the Court finds that counsel for the Trust Funds have reasonably performed 15 compensable hours of work on this matter based on the reasonable hourly rates of Jane P. Ewers, David L. Sieck, and legal assistant Jody Eckel. The Court therefore awards the Trust Funds $4,110.50 in attorney fees for the billing entries listed between May 25, 2021, and October 14, 2022. Dkt. No. 25-1 at 2–4.

4. Costs

The Trust Funds next request reimbursement for $527 in costs for the case filing fee and for service of process. Dkt. No. 24-1 at 2; *see* Dkt. No. 25-1 at 4–7. ERISA allows recovery of the "costs of the action." 29 U.S.C. § 1132(g)(2)(D); *see also, e.g.*, *Masonry Sec. Plan of Wash. v. Radilla*, No. 2:20-00350-RAJ, 2021 WL 3602517, at *4 (W.D. Wash. Aug. 13, 2021) (awarding filing fee and service costs in an ERISA action). In addition, the filing fee and costs of service are recoverable under the provisions set forth in the trust agreements. Dkt. No 26-2 at 16, 76, 130. However, for the same reasons explained above with respect to the reasonableness of the number of hours expended, the Court declines to award the $60 in costs incurred by re-serving 509 Excavating in April 2023. Dkt. No. 25-1 at 7; *see Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, No. C-11-03685-JCS, 2012 WL 6711557, at *10 (N.D. Cal. Dec. 20, 2012) (recommending denial of unreasonable service of process costs in an ERISA action), *report and recommendation adopted*, 2013 WL 12173603 (N.D. Cal. Feb. 14, 2013); *see also Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110 (JS) (ARL), 2022 WL 866853, at *5 (E.D.N.Y. Mar. 23, 2022) (evaluating whether costs in ERISA default judgment motion were "necessarily incurred[] and/or reasonable"). Therefore, the Court awards the Trust Funds $467 in costs.

The Trust Funds also seek $7,140 in auditor costs. Dkt. No. 24-1 at 2. They retained

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 12

Winters from February 2021 until March 2022, and then again in the spring of 2023 to compute additional interest. Dkt. No. 27 at 2–3. Pursuant to the trust agreements, the Trust Funds are entitled to recover auditor fees. Dkt. No 26-2 at 16, 76, 130. Thus, the Court also awards $7,140.00 in auditor costs. *See Bd. of Trs. of The Empl. Painters' Tr. v. Coast Mirror Co., Inc.*, No. 2:22-00570-MJP, 2023 WL 1068510, at *1 (W.D. Wash. Jan. 27, 2023) (awarding auditor costs to plaintiffs).

5. Pre- and Post-Judgment Interest

The Trust Funds further request $48,419.98 in pre-judgment interest, calculated through May 12, 2023. Dkt. No. 24-1 at 2. Consistent with the trust agreements, this interest was calculated at 12% per annum upon each monthly contribution delinquency from the date the contributions became first due. Dkt. No. 27 at 2–3; Dkt. No 26-2 at 16, 76, 130. And under ERISA, pre-judgment interest is awarded to parties who obtain judgments in their favor, in addition to liquidated damages. *See, e.g.*, *Emp. Painters' Tr. v. Cascade Coatings*, No. C12-0101-JLR, 2014 WL 2893298, at *7 (W.D. Wash. June 25, 2014) (citing *Plumbers & Pipefitters Nat'l Pension Fund v. Eldridge*, 232 F. App'x 680, 683 (9th Cir. 2007)). Therefore, the Trust Funds are entitled to pre-judgment interest under the trust agreements and Section 1132(g)(2)(B), (E), in the amount of $48,419.98.

Finally, the Trust Funds ask for post-judgment interest on the judgment at the same 12% per annum rate. Dkt. No. 24-1 at 2. However, the relevant contractual provisions entitle the Trust Funds to post-judgment interest at the contractual rate of 12% only as to the delinquent contributions. *See* Dkt. No 26-2 at 16 ("Delinquent contributions shall bear interest at the rate of twelve percent (12%) per annum or at the highest rate permitted under applicable law, if less, from the time they become due and payable."). Accordingly, the Court awards the Trust Funds post-judgment interest on the delinquent contributions accruing at the rate of 12% per annum from the date judgment is entered until fully paid, and at the rate fixed under 28 U.S.C. § 1961 for the

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 13

remaining judgment amounts. *See, e.g.*, *Bd. of Trs. of Emp. Painters' Tr. v. D. Ciulla Flooring LLC*, No. C19-1479 MJP, 2020 WL 1151334, at *3 (W.D. Wash. Mar. 10, 2020).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Trust Funds' Motion for Default Judgment. Dkt. No. 24. Default judgment shall enter in favor of the Boards of Trustees of the Locals 302 and 612 of the International Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Fund, and Western Washington Operating Engineers-Employers Training Trust Fund and against Defendant 509 Excavating LLC, as follows:

1. Default judgment in the total amount of $193,921.91, consisting of $119,419.42 in delinquent fringe benefit contributions under ERISA for July 2018 through December 2020; $14,365.01 in liquidated damages; $48,419.98 in accrued pre-judgment interest; $4,110.50 in attorney's fees; $7,140 in audit costs; and $467 in legal costs;

2. Post-judgment interest on delinquent contributions accruing at the rate of 12% per annum from the date judgment is entered until fully paid; and

3. Post-judgment interest on remaining judgment amounts at the rate fixed under 28 U.S.C. § 1961.

Dated this 14th day of September, 2023.

Kymberly K. Evanson
United States District Judge